[¶1] This matter came before the Court upon the "Board of Professional Responsibility's Report and Recommendation for Order of 90 Day Suspension," filed herein April 24, 2018. The Court, after a careful review of the Board of Professional Responsibility's Report and Recommendation and the file, finds that the Report and Recommendation should be approved, confirmed, and adopted by the Court, and that Respondent, Greg L. Goddard, should be suspended for his conduct. It is, therefore,
[¶2] ADJUDGED AND ORDERED that the "Board of Professional Responsibility's Report and Recommendation for Order of 90 Day Suspension," which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further
[¶3] ADJUDGED AND ORDERED that, effective June 6, 2018, Greg L. Goddard is suspended from the practice of law for 45 days. That number represents a suspension of 90 days with credit for 45 days served, based on time served in federal custody; and it is further
[¶4] ORDERED that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Mr. Goddard shall reimburse the Wyoming State Bar the amount of $6,927.54, representing the costs incurred in handling this matter, as well as pay the administrative fee of $750.00. Mr. Goddard shall pay the total amount of $7,677.54 to the Wyoming State Bar on or before October 1, 2018; and it is further
[¶5] ORDERED that the Clerk of this Court shall docket this Order of Suspension, along with the incorporated Report and Recommendation for Order of 90 Day Suspension, as a matter coming regularly before this Court as a public record; and it is further
[¶6] ORDERED that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of Suspension, along with the incorporated Report and Recommendation for Order of 90 Day Suspension, shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further
[¶7] ORDERED that the Clerk of this Court cause a copy of this Order of Suspension to be served upon Respondent, Greg L. Goddard.
[¶8] DATED this 31st day of May, 2018.
BY THE COURT:
/s/ E. JAMES BURKE
Chief Justice
Attachment *232 BEFORE THE SUPREME COURT STATE OF WYOMING
In the Matter of Greg Goddard WSB No. 5-1252, BPR No. 2016-28 Respondent.
BOARD OF PROFESSIONAL RESPONSIBILITY'S REPORT AND RECOMMENDATION FOR ORDER OF 90 DAY SUSPENSION
THIS MATTER came before the Board of Professional Responsibility of the Wyoming State Bar (the "Board") on March 26, 2018, for a disciplinary hearing pursuant to Rule 15(b), Wyo.R.Disc.Proc. The entire board was in attendance. The Wyoming State Bar was represented by Bar Counsel. Mark W. Gifford. Respondent was present in person as was his counsel, Scott E. Ortiz. Bar Counsel's Exhibits BC-1 through BC-30 and BC-32 through BC-61 were received into evidence, as were Respondent's Exhibits 1 and 25.
Based upon the exhibits received into evidence, the testimony of witnesses and with due consideration given to the statements of counsel, the Board unanimously FINDS, CONCLUDES and RECOMMENDS as follows:
Findings of Fact
1. The Board accepts the parties' pre-hearing stipulation and renders the following findings based upon the stipulation, Respondent's supporting affidavit of factual basis, and the testimony and exhibits received into evidence at the hearing:
*233 a. Respondent is a licensed attorney in the State of Wyoming, Bar #5-1252. Respondent has been licensed to practice in Wyoming since 1972, and maintains an active practice of law in Buffalo, Wyoming.
b. This case stems from Respondent's representation of Stacey Ridley and her desire to file personal bankruptcy. Respondent's representation of Ms. Ridley originally began in 2011 but, due to a number of personal issues, it was very difficult for Ms. Ridley to follow through with the requirements of filing a bankruptcy petition. After Ms. Ridley stopped coming to Respondent's office for scheduled appointments, and refused to sign necessary paperwork, Respondent ultimately closed the file for a year or more. In 2015, Ms. Ridley renewed her interest in filing a bankruptcy petition.
c. Ms. Ridley's bankruptcy petition was ultimately drafted and ready for filing in September 2015. This generally coincided with a partial distribution of assets from the Estate of Charles Evitt. In the Evitt probate proceeding, Respondent was representing Ms. Ridley's mother, Mary Jo Evitt. Ms. Evitt was the surviving spouse, who had elected against the terms of her husband's will. Ms. Ridley was Charles Evitt's stepdaughter. In his will, Mr. Evitt left Ms. Ridley a cash bequest of $25,000.
d. When preparing the petition, Respondent knowingly failed to list the $25,000 bequest as a contingent asset on Ms. Ridley's bankruptcy schedule of assets.
e. One of Ms. Ridley's creditors was aware of the $25,000 bequest in the will, and raised the issue with the bankruptcy trustee. Within a couple of months after this notification, the $25,000 was provided to the bankruptcy trustee and ultimately distributed to Ms. Ridley's creditors.
*234 f. The Representative of the Office of the United States Trustee, Daniel Morse, had serious concerns about this sequence of events, and as a result, filed a complaint against Ms. Ridley, based on the failure to list the $25,000 bequest.
g. After reviewing the complaint from the bankruptcy trustee, Respondent agreed, via signed stipulation, to a two (2) year suspension from practicing in bankruptcy court. Respondent also agreed to return any fees he received from Ms. Ridley, (or her family members), for the work Respondent performed during the bankruptcy proceeding. Respondent further agreed to provide to the bankruptcy trustee verification of his self-report of his actions to Bar Counsel.
h. Subsequent to Respondent's suspension in bankruptcy court, Respondent was notified that the U.S. Attorney's Office intended to seek an indictment charging Respondent with a bankruptcy fraud offense.
i. After negotiations with the U.S. Attorney's office, a plea agreement was reached wherein Respondent entered a guilty plea to the misdemeanor offense of contempt of court. Part of the plea agreement also required Respondent to spend 45 days in jail as part of a stipulated sentence. This plea agreement was accepted by Magistrate Judge Kelly Rankin and sentence was ordered.
j. Respondent began his jail sentence in early December 2016, until ordered to be released by the Federal Marshal's office in January 2017.
k. The failure on Respondent's part to list the $25,000 contingent asset initially jeopardized Ms. Ridley's chance to receive a discharge through the bankruptcy court. Respondent obtained and paid for new counsel for Ms. Ridley. After a hearing in bankruptcy court on February 23, 2017, Judge Parker granted Ms. Ridley her discharge of debt.
*235 2. Respondent has unconditionally admitted that his conduct in the Ridley bankruptcy matter violated 8.4(b) (criminal conduct reflecting adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects) and 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). The parties have stipulated that these admitted violations may be deemed established by clear and convincing evidence, and the Board so finds.
3. Pursuant to the parties' stipulation, the charges of violating Rules 3.3 (candor toward the tribunal), 4.1(a) (false statement of material fact) and 8.4(d) (conduct prejudicial to the administration of justice) are dismissed.
4. The Board having accepted the parties' stipulation with respect to Respondent's violation of Rules 8.4(b) and 8.4(c), the hearing proceeded with the presentation of testimony and exhibits relevant to the four factors set forth in Rule 15(b)(3)(D), Wyo.R.Disc.Proc., for the purpose of determining the appropriate sanction for Respondent's misconduct. These factors are:
(i) Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;
(ii) Whether the lawyer acted intentionally, knowingly, or negligently;
(iii) The amount of the actual or potential injury caused by the lawyer's misconduct; and
(iv) The existence of any aggravating or mitigating factors.
5. The Board finds that Respondent violated duties owed to the public, to the client and to the legal system, as evidenced specifically by Respondent's guilty plea in the federal criminal case. The Board finds that Respondent's violations of Rules 8.4(b) and (c) are violations of the lawyer's duties owed to the public and call into play ABA Standard 5.1, "Failure to *236 Maintain Personal Integrity." The presumptive sanction for Respondent's misconduct pursuant to Standard 5.1 is a suspension.
6. The Board finds that Respondent acted knowingly and intentionally in failing to disclose the $25,000 specific bequest in Ms. Ridley's Chapter 7 bankruptcy petition.
7. The Board finds that Respondent's conduct created the potential for substantial injury to the client and the administration of justice, and that the client suffered actual harm as a result of Respondent's conduct in the form of delay, legal exposure and additional litigation.
8. The Board finds the following aggravating factors: (i) substantial experience in the practice of law and (k) illegal conduct by Respondent.
9. The Board finds the following mitigating factors: (a) absence of a prior disciplinary record; (d) timely good faith effort to make restitution or rectify consequences of misconduct; (e) a cooperative attitude toward these proceedings; (g) character and reputation (three district judges attested to Respondent's good character and competence as a lawyer); (k) imposition of other penalties or sanctions (jail time, suspension of practice in the bankruptcy court, adverse publicity and public humiliation); and (l) remorse.
10. The Board finds that the appropriate sanction for Respondent's conduct is a 90 calendar day suspension with credit for 45 days served in the Johnson County Detention Center, for a net suspension of 45 days. The Board finds that suspension for a longer period in this matter would be detrimental to the public at large, particularly those that Respondent has represented at reduced or no cost. The Board finds that there is no likelihood of future damage or risk to the public or administration of justice in general once Respondent has served the net, 45-day suspension.
*237 Conclusions of Law
11. Rule 8.4(b), Wyo.R.Prof.Cond., provides, "It is professional misconduct for a lawyer to: ... (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."
12. Rule 8.4(c), Wyo.R.Prof.Cond., provides, "It is professional misconduct for a lawyer to: ... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.
13. Rule 6(c)(4), Wyo.R.Disc.Proc. provides, "When misconduct has been proved by clear and convincing evidence at a hearing, or misconduct has been established by default, [the BPR shall] issue a private reprimand or recommend an appropriate public discipline to the Court."
14. Rule 15(b)(3)(D), Wyo.R.Disc.Proc., lists the factors to be considered in determining lawyer sanctions:
(D) In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions:
(v) Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;
(vi) Whether the lawyer acted intentionally, knowingly, or negligently;
(vii) The actual or potential injury caused by the lawyer's misconduct; and
(viii) The existence of any aggravating or mitigating factors.
15. The American Bar Association's Standards for Imposing Lawyer Sanctions (hereinafter referred to as the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the *238 public, the legal system, and the legal profession." ABA Standard 3.0 lists the factors to be considered in imposing a sanction after a finding of lawyer misconduct, and mirrors the language of Rule 15(b)(3)(D), Wyo.R.Disc.Proc.:
(a) the duty violated;
(b) the lawyer's mental state;
(c) the potential or actual injury caused by the lawyer's misconduct; and
(d) the existence of aggravating or mitigating factors.
16.The Duty Violated. Respondent's violation of Rules 8.4(b) and (c), which essentially involve violation of a duty owed to the public, is addressed in ABA Standard 5.1, "Failure to Maintain Personal Integrity."
Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, or in cases with conduct involving dishonesty, fraud, deceit, or misrepresentation:
5.11 Disbarment is generally appropriate when:
(a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or
(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.
5.13 Reprimand [i.e., public censure under Rule 9(a)(3) of the Wyoming Rules of Disciplinary Procedure] is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.
5.14 Admonition [i.e., private reprimand under Rule 9(a)(4) of the Wyoming Rules of Disciplinary Procedure] is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.
*239 17.The Lawyer's Mental State. The preamble to the ABA Standards includes the following discussion regarding mental state:
The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.
18.The Potential or Actual Injury Caused by the Lawyer's Misconduct. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from `serious' injury to `little or no' injury; a reference to `injury' alone indicates any level of injury greater than `little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."
19.Aggravating and Mitigating Factors. ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:
9.1 Generally
After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.
9.2 Aggravation
9.21 Definition. Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.
*240 9.22 Factors which may be considered in aggravation. Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled substances.
9.3 Mitigation
9.31 Definition. Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.
9.32 Factors which may be considered in mitigation. Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure of disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical disability;
(i) mental disability or chemical dependency including alcoholism or drug abuse when:
(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;
(2) the chemical dependency or mental disability caused the misconduct;
*241 (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and
(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.
(j) delay in disciplinary proceedings;
(k) imposition of other penalties or sanctions;
(l) remorse; and
(m) remoteness of prior offenses.
20. With respect to costs of disciplinary proceedings, Rule 25, Wyo.R.Disc.Proc., provides:
Rule 25. Expenses and Costs.
(a) The expenses of members of the BPR, the ROC, Bar Counsel, and Special Bar Counsel, costs of a Disciplinary Judge, and other expenses incurred in the implementation or administration of these rules, shall be paid with funds allocated for that purpose by the Wyoming State Bar. The Wyoming State Bar shall compensate and pay the expenses of Disciplinary Judges.
(b) In addition to any costs assessed by the BPR, the ROC or the Court, an administrative fee of seven hundred fifty dollars ($750.00) shall be imposed by the BPR in all cases where private discipline, diversion, or public discipline is ordered. The administrative fee shall be assessed on a per-complaint basis.
(c) Costs means actual expenses incurred by Bar Counsel, the ROC, the BPR, and the Wyoming State Bar in connection with a disciplinary proceeding, reinstatement proceeding or diversion program, including without limitation the cost of depositions used in a proceeding, hearing transcripts, copying costs, conference call and other telephone expenses, fees for service of process and subpoenas, witnesses fees, fees paid to expert witnesses, and costs associated with travel, meals and lodging for the ROC, the BPR, the BPR Clerk and the Office of Bar Counsel.
(d) When an attorney is privately disciplined, the BPR or the ROC may assess against the attorney the costs incurred in connection with the investigation and disciplinary proceeding, together with the administrative fee.
(e) When public discipline is recommended by the BPR, it shall certify to the Court the costs incurred in connection with the investigation and disciplinary proceeding, together with the administrative fee. The BPR may recommend to the Court the assessment of those costs and, if the Court imposes discipline, the Court may assess all or any part of the certified costs, together with the administrative fee, against respondent.
*242 (f) In any case where costs and fees are assessed, they shall be paid to the Wyoming State Bar.
(g) Costs have been incurred in this matter in the amount of six thousand nine hundred twenty seven and 54/100 ($6,927.54) dollars.
Recommendation
Based upon the foregoing findings and conclusions, the Board recommends that the Court issue an order of 90 day suspension to Respondent with credit for forty five (45) days served in federal custody; that Respondent be required to pay an administrative fee of $750.00 as provided in Rule 25(b), Wyo.R.Disc.Proc.; and that Respondent be required to reimburse the Wyoming State Bar for certified costs of this proceeding in the amount of six thousand nine hundred twenty seven and 54/100 ($6,927.54) dollars as provided in Rule 25(e), Wyo.R.Disc.Proc.
SUBMITTED this 19 th day of April, 2018.
___________________________ Jeffrey A. Donnell Chairman Board of Professional Responsibility P. O. Box 109 Cheyenne, WY 82003 jdonnell@penceandmac.com